IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  03-cv-02601-WYD-OES

TERESA K. SUAZO;
JUDITH K. GLADWIN, and
MICHAEL E. GLADWIN,

      Plaintiffs,

v.

G.F.I. AMERICA EMPLOYEE BENEFIT PLAN;
G.F.I. EMPLOYEE MEDICAL BENEFIT PLAN;
JEFFERSON PILOT FINANCIAL INSURANCE COMPANY, formerly GUARANTEE
MUTUAL LIFE COMPANY, a Nebraska corporation; and
CORPORATE BENEFIT SERVICES OF AMERICA, INC., a Minnesota corporation,

      Defendants.

_____

**ORDER OF DISMISSAL**
_____

I.    <u>INTRODUCTION</u>

    THIS MATTER comes before the Court on Defendants' Joint Motion for

Determination filed April 25, 2005.  By way of background, Plaintiffs are the life

insurance beneficiaries of Edwin Gladwin.  Their Complaint asserts claims under the

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ["ERISA"]

and a state law claim under South Dakota Law.  The case was originally filed in the

District Court, County of Larimer, State of Colorado, and was removed to this Court by

Defendants pursuant to a Notice of Removal dated December 23, 2003.  An Amended

Complaint was filed March 1, 2004.

By Order dated July 27, 2004, I granted Defendants' Motion to Dismiss and to Strike Jury Demand filed January 6, 2004, and dismissed the second claim for relief only.  I found that this claim was preempted by ERISA.  The first claim, seeking relief under ERISA, remains pending and is the subject of Defendants' Joint Motion for Determination.  I now turn to an analysis of that motion.

II.   FACTUAL BACKGROUND

Defendants' Joint Motion for Determination seeks to dismiss the remaining ERISA claim.  The facts pertinent to this motion are, for the most part, found in the prarties' Stipulation of Facts filed April 28, 2005.  As stated therein, Edward Gladwin was a participant in the G.F.I. Employee Medical Benefit Plan, as he was employed by a subsidiary of G.F.I America.  Stip. of Facts, ¶¶ 1-2.[1]  Plaintiffs are the beneficiaries of life insurance coverage procured by Mr. Gladwin under the Plan.  *Id.*,   ¶ 3.

Defendant Jefferson Pilot Financial Insurance Company ["Jefferson Pilot"] issued a Group Life Insurance Policy (No. GL 0000010006705) to G.F.I. America (the Policyholder) which provides certain benefits to eligible participants under the terms of the Policy.  *Id.*, ¶¶ 4, 5.  Commencing on July 1, 1993, Mr. Gladwin purchased coverage under the Policy from Jefferson Pilot through his employer in the amount of $106,000.  *Id.*, ¶ 6.  This consisted of $70,000 of Optional Life insurance coverage and $36,000 of Basic Life insurance coverage.

---

[1]   It appears that this Plan is not part of the administrative record in this case, which record is attached to Defendants' motion.  I find this is not relevant, however, as the Plan is not pertinent to this decision.

Under the terms of the Policy, the Basic Life insurance coverage for Class 1 employees such as Mr. Gladwin could not exceed one times the employee's basic annual earnings rounded to the next higher $1,000.  *Id.*, ¶¶ 8-9.  Also under the Policy, the Basic Life insurance benefit was limited to a maximum of $100,000 and the Optional Life insurance benefit was limited to a maximum of $150,000.  *Id.*, ¶¶ 11, 12.

While not in the Stipulation of Facts, I note that the Policy stated that "evidence of insurability must be submitted to and approved by Guarantee Life Insurance Company for Insured Persons electing to participate in the Optional Life Insurance Program *or to increase their current amounts of Optional Life Insurance.*"  JPFI-GLAD 00246, attached to Defs.' Mot. for Joint Determination (emphasis added).[2]  On the other hand, the Policy contained a provision that evidence of insurability is required if: "(1) You apply for coverage more than 31 days after you become eligible; or (2) you make written application to re-enroll for coverage after you have requested: (a) to cancel your coverage; (b) to stop payroll deductions from the coverage; or (c) to stop premium payments from your Section 125 Plan Account."  JPFI GLAD 00009.  Finally, I note that the Policy contained a provision stating that "Clerical error by the Group Policyholder or Participating Employer will: (1) not affect the amount of insurance which would otherwise be in effect . . . . "  Stip. of Facts, ¶ 21.

In October of 1996, Defendant Corporate Benefit Services of America, Inc. ["CBSA] received a Report of Changes Form from Edward Gladwin's employer.  *Id.*,    ¶

---

[2]  *See also* the Certificate, "If you elect to participate in the Optional Life Insurance program, evidence of insurability must be submitted to and approved by Guarantee Life Insurance Company before such coverage will be effective."  JPFI-GLAD 00138.

13.[3]   This form contained reference to a number of employees and their "Life Volume",

and stated as to Mr. Gladwin that his "Life Volume" was $107,540.00.   *See* JPFI-GLAD

00063.  While the term "Life Volume" is not defined in the Record or by any party, it is

undisputed that this form was interpreted by CBSA to request a change to Mr.

Gladwin's Annual Earnings, and therefore, his Basic Life coverage, to $107,540.  Stip.

of Facts, ¶ 13.  It is also undisputed, however, that under the terms of the Policy, in

October 1996 Mr. Gladwin would have been eligible for an increase in Optional Life

insurance benefits from the $70,000 already in force up to $150,000.  *Id.*, ¶ 14.  A

review of the record shows that Mr. Gladwin did not submit any document actually

seeking an increase in "Optional Life" insurance benefits nor did he provide evidence

of insurability in connection with any attempt to increase Optional Life benefits.

Since CBSA interpreted the Report of Changes form to be an increase in

Mr. Gladwin's salary to $107,540, on or about November 1, 1996, CCBSA began

erroneously billing the employer for $100,000 in basic life coverage (the maximum

amount allowed), and continued to bill Mr. Gladwin for $70,000 in Optional Life

insurance coverage ($170,000 total).  *Id.*, ¶ 15.  This continued until Mr. Gladwin's

death.

On February 18, 1998, Mr. Gladwin completed an employee enrollment form

provided by CBSA in which he indicated that his life insurance benefits were

$170,000.00 and changed the distribution of the proceeds among his designated

beneficiaries.  *Id.*, ¶ 16; *see also* JPFI-GLAD 00112.  In that enrollment form,

---

[3]  CBSA was the contract administrator for the Plan.

Mr. Gladwin properly identified his annual earnings as $40,000.00.  *Id.*  The form

contained a section entitled "Declination of Participation" that stated, "EVIDENCE OF

INSURABILITY AT MY OWN EXPENSE may be required should I decide to apply for

coverage at a later date."  *Id.*  The employee enrollment form completed by Mr. Gladwin

was sent to CBSA by his employer and received by CBSA on or about March 4, 1998.

*Id.*, ¶ 17.  It appears that Jefferson Pilot did not receive this form until a death claim

form was submitted for Mr. Gladwin on October 16, 2001.  *See* Pl.'s Resp. to Defs.'

Joint Mot. for Determination at 8, ¶ 12 (citing JPFI-GLAD 00131-00132).

In a letter to CBSA from Jefferson Pilot dated May 17, 2002, Jefferson Pilot

stated that this employee enrollment form was a request by Mr. Gladwin for a total

insurance amount of $170,000.00, which would have consisted of $40,000.00

representing Mr. Gladwin's annual earnings, and $130,000.00 of Optional Life

insurance.  JPFI-GLAD 00131.  The letter also states that while Mr. Gladwin's form

should have been interpreted as a request to receive additional Optional Life insurance

(from $70,000 to $130,000), Mr. Gladwin needed to submit evidence of insurability to

Guarantee Life Insurance Company/Jefferson Pilot for approval, per the Policy.  *Id.* at

00131-00132.  It is undisputed that such evidence of insurability was never submitted

by Mr. Gladwin, although it is also undisputed that the administrative record does not

contain any request from any of the Defendants for such evidence.

The administrative record also does not contain evidence that Mr. Gladwin paid

any additional premium for an alleged increase in Optional Life insurance coverage

from $70,000 to $130,000.  Instead, Mr. Gladwin's employer G.F.I. wad billed for the

additional life insurance coverage beginning in October 1996, which consisted of $100,000 in basic life coverage. Stipulation of Facts, ¶ 15. G.F.I. continued to pay this premium for almost five years until Mr. Gladwin's death. Pursuant to the Policy, insured persons are not required to make contributions for Basic Life insurance, but are required to make contributions for Optional Life insurance. JPFI-GLAD 00245-00246.

On the date of his death in August 2001, Mr. Gladwin earned $45,000.02. This amount, rounded to the next higher $1000 pursuant to the Policy, is $46,000.00. *Id.*, ¶ 18. On or about October 10, 2001, CBSA submitted to Jefferson Pilot a claim for payment of $170,000.00 in death benefits. *Id.*, ¶ 19. On or about November 28, 2001, Jefferson Pilot paid $116,000.00 in life insurance benefits to Plaintiffs (consisting of $70,000 in Optional Life benefits and $46,000 in Basic Life benefits). *Id.*, ¶ 20. In response to inquiries made by Plaintiffs, Jefferson Pilot and CBSA denied that they had any obligation to pay an additional $54,000.00 to Plaintiffs. *Id.*, ¶ 22.[4] Jefferson Pilot sustained the denial of $54,000 in additional life insurance by letter dated May 17, 2002, and advised Plaintiffs' attorney by letter dated July 26, 2002, that it found no basis to award the $54,000 claimed by Plaintiffs. *Id.*, ¶¶ 23, 24.

---

[4] CBSA stated in a letter dated July 8, 2002, that "CBSA has no record of receiving neither optional life enrollment information nor the required Jefferson Pilot Insurance Company approval letter on the optional life coverage that requires evidence of insurability. The optional life coverage was unchanged and remained $70,000 from the implementation date of July 1, 1993. Our records show that G.F.I. America and Jefferson Pilot Insurance Company provided CBSA with the appropriate optional life coverage changes and approvals. We have found no basis for any claim of error or omission on the part of CBSA." JPFI-GLAD 00061. That letter also stated that "CBSA has no contractual obligation or any documentary/guidelines from Jefferson Pilot Insurance Company requesting CBSA provide them with any salary changes or enrollment beneficiary change information." *Id.*, 00062.

Plaintiffs' ERISA claim in the Amended Complaint asserts that Defendants G.F.I. Medical Benefit Plan, CBSA and Jefferson Pilot "have failed to properly enforce and comply with the terms of the Plan and insure that payment of all death benefits have been paid to the Plaintiffs as beneficiaries under the life insurance policy issued by Defendant Jefferson Pilot."  Am. Compl. ¶ 37.  Plaintiffs also assert that Defendants "have breached their obligations as fiduciaries of the Plan to pay out life insurance proceeds purchased by Edward Gladwin for the benefit of the Plaintiffs."  *Id.*, ¶ 38. Plaintiffs assert that CBSA "has breached its obligation to Edward Gladwin by failing to ensure the accuracy of the information in the Report of Change form completed by Edward Gladwin and failing to require Edward Gladwin to provide evidence of insurability to the extent that was required to obtain the requested level of optional life coverage."  *Id.*, ¶ 39.  Plaintiffs request that they be awarded an additional $54,000 in life insurance coverage (*id.*, ¶ 41), representing the difference between what they have already been paid and the $170,000.00 that Mr. Gladwin's employer and Mr. Gladwin were being billed for.

III.   ANALYSIS

A.   Standard of Review

While the motion seeks to dismiss Plaintiffs' ERISA claim, it does not specify what Rule it is relying on in connection with such dismissal.  The Tenth Circuit has stated that "if matters outside the pleading are presented to and not excluded by the court, [a Rule 12(b)(6) motion] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable

opportunity to present all material made pertinent to such motion by Rule 56." *David v. City & County of Denver,* 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied*, 522 U.S. 858 (1997).  Reversible error may occur if the district court considers matters outside the pleadings but fails to convert the motion to dismiss into a motion for summary judgment.  *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998).

In this case, Defendants' motion attaches the administrative record in this case, which constitutes the entire claim file.  Accordingly, I will treat the motion as a motion for summary judgment.  While the parties were not provided advance notice of this, I find that the parties had constructive notice that the motion may be treated as a summary judgment motion since the motion and the response both contain reference to undisputed material facts, Plaintiffs stated in their response that it appeared the motion was filed under Rule 56 (Pl.'s Resp. to Defs.' Joint Mot. for Determination, n. 1), and both parties relied on the administrative record attached to Defendants' motion.  *See Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1254 (10th Cir. 2005) ("constructive notice or a non-movant's reliance upon evidentiary materials in response to a motion to dismiss may obviate the need for formal notice by the court of conversion"); *David*, 101 F.3d at 1352 ("[t]he required notice may be actual or constructive . . . ").

B.    The Merits of the Motion

Defendants' motion asserts that the $116,000 already paid to Plaintiffs by Defendant Jefferson Pilot Financial Insurance Company ["Jefferson Pilot"] represents the appropriate life insurance benefit under the clear language of the policy at issue,

representing the $70,000 in Optional Life insurance coverage selected by Mr. Gladwin plus his annual salary at the time of death rounded to the next higher $1,000 ($46,000). Defendants further assert that the additional $54,000 sought by Plaintiffs is not authorized by either the policy or the law, as it is entirely dependent on the occurrence of a clerical error.

Defendants argue that the policy is clear on the handling of clerical errors, as it states that such errors "do not affect the amount of insurance which would otherwise be in effect."  Defs.' Joint Mot. for Determination at 9 (citing JPFI-GLAD 00037). Defendants further argue that the additional amount sought by Plaintiffs is entirely dependent on equitable principles that may not be considered under ERISA.

In response, Plaintiffs first assert that the Court should review the decision of Jefferson Pilot to deny benefits on a *de novo* basis.  Second, Plaintiffs assert that Defendants mischaracterize Plaintiffs' claim in an effort to deny Edward Gladwin's beneficiaries the life insurance proceeds purchased and paid for by Mr. Gladwin and his employer.  In that regard, it is argued that the ERISA claim is not based on a "clerical error".  Instead, the undisputed evidence according to Plaintiffs shows that Mr. Gladwin and his employer paid for aggregate life insurance benefits in the amount of $170,000 from and after November 1, 1996 for nearly five years until Mr. Gladwin's death.  Further, the record shows that the excess premiums have not been refunded. Plaintiffs also assert that Mr. Gladwin requested a change in his aggregate life insurance coverage to include $170,000 in coverage on February 18, 1996, and that

the form provided that Mr. Gladwin did not have to provide "evidence of insurability" at that time.[5]

Plaintiffs also argue that even if the Court were to determine that a "clerical error" occurred, such an error does not relieve Defendants from the obligation of paying benefits.  The language in the policy regarding clerical errors that Defendants rely on actually supports Plaintiffs' argument as it states that a clerical error will not affect the amount of insurance otherwise in effect.  Here, $170,000 of insurance had been purchased and paid for by Mr. Gladwin and his employer.  Thus, a clerical error cannot defeat Plaintiffs' claim to the purchased benefit.  Finally, Plaintiffs argue that Defendant Jefferson Pilot waived the right to deny coverage by failing to timely refund premiums paid by Mr. Gladwin's employer.

Turning to the analysis, I first address whether Plaintiffs' arguments are the result of a clerical error and/or whether Mr. Gladwin actually contracted for $170,000 of life insurance, as compared to $116,000 of insurance as claimed by Defendants.  I agree with Defendants that the administrative record supports their argument that the increase in life insurance benefits to $170,000.00 was the result of a clerical error based on the Report of Changes Form received in October 1996 by Mr. Gladwin's employer.  Mr. Gladwin did not actually contract for $170,000 of insurance.

---

[5]  Plaintiffs also assert that the effective date of coverage provisions and evidence of insurability provisions (JPFI-GLAD 00009 and 00021) are internally inconsistent, that the policy does not indicate what "evidence of insurability" would require, and that Plaintiffs were denied discovery by the magistrate judge on this issue.  To the extent Plaintiffs' response may be requesting discovery, I deny this request.  I agree with Magistrate Judge Schlatter's Order Denying Plaintiff's Motion for Leave to Conduct Limited Discovery (filed November 16, 2004).  The ERISA claim is governed by the administrative record and that further discovery is not proper.

As stated in the Factual Background, it is undisputed that CBSA interpreted the Report of Changes Form as an increase in Mr. Gladwin's salary from $36,000 to $107,540.  Accordingly, after receipt of that form, on November 1, 1996, CBSA began billing Mr. Gladwin's employer for additional Basic Life insurance premiums to represent the perceived increase in Mr. Gladwin's salary.  Since the maximum amount of Basic Life insurance was limited to a salary of $100,000, Mr. Gladwin's employer was billed for $100,000 of Basic Life on behalf of Mr. Gladwin.

While Plaintiffs argue that Mr. Gladwin applied for the additional insurance through his employee enrollment form, and that this form should be interpreted as an application for additional Optional Life insurance, this argument is not supported by the record.  First, it is true that the form states it is an application for "CHANGE IN COVERAGE", and that in a section stating "Life Ins. Amount", Mr. Gladwin filled in "$170,000.00" (JPFI-GLAD 00112).  However, this cannot reasonably be interpreted to be a request for a change in coverage to $170,000 since it is undisputed that Mr. Gladwin was already receiving coverage in this amount as a result of a clerical error, and had been receiving such coverage since 1996.[6]  The more reasonable construction of the form is that Mr. Gladwin was seeking a change in the distribution of the life insurance coverage based on the fact that his coverage had been increased

---

[6]  As stated previously, after CBSA received the Report of Changes Form, it erroneously determined that Mr. Gladwin's salary had been increased.  Accordingly, it changed the amount of Edward Gladwin's Basic Life insurance coverage to $100,000 and billed the employer for same.  That $100,000, combined with the $70,000 for which Mr. Gladwin was being billed, represented $170,000 in life insurance coverage for which Mr. Gladstone and his employer were being billed as of 1996.

pursuant to CBSA's error.  Indeed, Mr. Gladwin does change the distribution of the coverage in the section addressing beneficiaries.[7]

Second, even if the employee enrollment form could be perceived as an application for additional Optional Life insurance coverage, it is undisputed that Mr. Gladwin did not submit evidence of insurability as required by the policy.  While Plaintiffs argue that the policy was ambiguous at to when such evidence was required, I disagree.  The Schedule of Insurance attached to the policy specifically noted as to Optional Insurance that "Evidence of insurability must be submitted to and approved by Guarantee Life Insurance for Insured Persons electing to participate in the Optional Life Insurance Program *or to increase their current amounts of Optional Life Insurance*." JPFI-GLAD 00246 (emphasis added).[8]  Further, the Administrative Record does not contain any approval of the additional Optional Life insurance coverage, as required by the policy.  Finally, as previously stated, it is undisputed that Mr. Gladwin was not billed for additional Optional Life coverage, even though the policy required that the employee pay for such coverage.

---

[7]  I recognize that Jefferson Pilot indicated in a letter to CBSA after Mr. Gladwin's death that the employee enrollment form should have been interpreted by CBSA as a request to increase the amount of Optional Life Insurance from $70,000 to $130.000.  *See* JPFI-GLAD 00131.  However, the fact remains that CBSA interpreted the form as an increase in Mr. Gladwin's salary, and thus billed the employer for increased Basic Life insurance coverage.  Jefferson Pilot had no role in the decision to increase coverage, nor how this coverage was allocated.

[8]  Plaintiffs rely on the language regarding evidence of insurance contained in the record at JPFI-GLAD 00009.  That language does not address Optional Insurance specifically, while the above noted Schedule does.  Further, it states that evidence of insurability is required if the employee applies for coverage more than 31 days after he or she becomes eligible.  Thus, even under that provision, if the employee enrollment form is interpreted as an application for additional coverage, it would have been submitted more than 31 days after Mr. Gladwin became eligible for insurance and would have been subject to the requirement of submission of evidence of insurability.

I also reject Plaintiffs' argument that the employee enrollment form itself stated that Mr. Gladwin did not need to provide evidence of insurability. As Defendants note, the section of the form that Plaintiffs rely on is contained in the section entitled "Declination of Participation." In the case an employee declined to participate in obtaining life insurance, the employee was required to sign that section which stated, among other things, that the employee understands that "EVIDENCE OF INSURABILITY AT MY OWN EXPENSE may be required should I decide to apply for coverage at a later date." It is undisputed that Mr. Gladwin did participate and obtained coverage. Thus, this section was inapplicable to him, as evidenced by the fact that he did not sign that section.

Accordingly, I find that a clerical error resulted in the increase in insurance coverage from $116,000 to $170,000. Mr. Gladwin's employer was billed for an increase in the amount of Basic Life insurance coverage on the mistaken assumption that Mr. Gladwin's earnings had increased to over $107,000. Under the plain language of the policy, a clerical error will "not affect the amount of insurance which would otherwise be in effect." But for the error, the amount which otherwise would have been in effect was $116,000.00. Accordingly, I agree with Defendants that Plaintiffs are not entitled to the additional $54,000 under the terms of the plan or the policy.[9] I thus find that Plaintiffs' claim that Defendants "have failed to properly enforce and comply with

---

[9] To the extent this finding constitutes a review of Jefferson Pilot's decision to deny benefits, I will assume, since it was not addressed by Defendants, that a *de novo* review is applicable in this case. *See* Pls.' Resp. at 4-5 and the authority therein (arguing that the Plan does not provide any discretionary authority to the Administrator). Even under this more liberal standard of review, I find no error in connection with the decision to deny benefits.

the terms of the Plan and insure that payment of all death benefits have been paid to the Plaintiffs as beneficiaries under the life insurance policy issued by Defendant Jefferson Pilot" (Am. Compl. ¶ 37) must be dismissed.

Plaintiffs have not cited any authority that holds that the type of error at issue in this case entitles them to relief under ERISA. Plaintiffs have also not cited any authority that the actions at issue herein constitute a breach of fiduciary duty, as alleged in Paragraph 38 of the Amended Complaint. Finally, Plaintiffs have not cited any authority that supports their allegation that CBSA is liable for "a breach of its obligation to Edward Gladwin by failing to ensure the accuracy of the information in the Report of Change form . . . and failing to require Edwin Gladwin to provide evidence of insurability to the extent that was required to obtain the requested level of optional life insurance coverage." Am. Compl. ¶ 39. Accordingly, these claims are also subject to dismissal. To the extent Plaintiffs' claims seeking monetary damages can be interpreted as seeking equitable relief under ERISA, the claims are barred and must be dismissed. *Callery v. United States Life Ins. Co. in the City of New York*, 392 F.3d 401 (10th Cir. 2004).

Plaintiffs argue, however, that Defendants waived their right to deny benefits based on the fact that the administrative record does not show that Defendants refunded the excess premiums charged to Mr. Gladwin's employer in connection with the increase in Basic Life insurance coverage. I reject this argument. Plaintiffs acknowledge that they were unable to find any case law in an ERISA setting that

-14-

applied the doctrine of waiver.  *See* Pls.' Resp. at 15.  I do not believe the Tenth Circuit would apply the doctrine of waiver to an ERISA claim.

Further, even if such extra-contractual remedies were available under ERISA, the cases Plaintiffs did cite are not controlling, as they are not from this Circuit, nor are they analogous.  *Dairyland Ins. Co. v. Kammerer*, 327 N.W.2d 618 (Neb. 1982) involved an action where an automobile insurer was precluded from asserting that a policy was *void ab initio* based on false representations made by the insured when the insurer failed to cancel the policy and withheld return of overpaid premiums.  Under the authority of that case, even if ERISA allowed for such extra-contractual remedies, which it does not, only Defendant GFI would have the right to sue since it paid the excess premiums that have allegedly been withheld.  *Krauss v. Manhattan Life Ins. Co.*, 700 F.2d 870 (2nd Cir. 1980) involved a case asserting equitable estoppel.  Here, Plaintiffs did not assert equitable estoppel nor did they present any evidence of detrimental reliance on the part of Mr. Gladwin.

III.   CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendants' Joint Motion for Determination (filed April 25, 2005), which is treated as a motion for summary judgment, is **GRANTED** as to the first claim for relief asserted under ERISA.  It is

FURTHER ORDERED that since all claims in this case have been now dismissed, the Clerk of Court shall enter judgment in favor of Defendants and against Plaintiffs.

Dated:  January 13, 2006

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge